United States Court of Appeals,

Fifth Circuit.

No. 93-9149.

In re LETTER ROGATORY FROM the FIRST COURT OF FIRST INSTANCE IN CIVIL MATTERS, CARACAS, VENEZUELA, in the Matter of Electronic Data Systems Corporation.

Electronic Data Systems, Movant-Appellant.

Jan. 13, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, GOLDBERG and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal concerns the validity of an order appointing a commissioner to provide international judicial assistance pursuant to a letter rogatory issued by a Venezuelan court. Appellant Electronic Data Systems Corporation ("EDS") asserts that the information requested by the letter rogatory is not discoverable under Venezuelan law, and thus the letter rogatory should not be honored by the United States. Also, EDS argues that the letter rogatory denies it due process because the letter rogatory does not conform to certain statutory requirements and fails to give notice of what evidence is sought. We disagree on both counts and affirm.

I

A subsidiary of EDS, Electronic Data Systems de Venezuela, C.A., is involved in a labor dispute in Venezuela with Antonio Papalardo, a Venezuelan national. As part of this litigation, the First Court of First Instance in Civil Matters in Caracas, Venezuela issued a letter rogatory requesting judicial assistance

1

in verifying certain documents.  The pertinent portion of the letter rogatory is as follows:

> As per writ dated October 1, 1991, this Court agreed to issue a Letter Rogatory to any Judge or other offier [sic.] who shall be able to testify, with jurisdiction in the city of Dallas, Texas ... to help us in the practice of the following formalities:
>
> First:  The defendant requested the following in Chapter V of his writ of Calling of Proof:  "We respectfully request the Court to return to us, with a prior certification on file, the documents marked letters "B", "D", "E" and "F", respectively, in order to verify, through an expert testimony or any other suitable means which may be necessary, the authenticity of the above mentioned documents, whether before the immigration authorities of the city of Dallas, Texas, United States of America, or at the offices of Electronic Data Systems Corporation in the same city ...

The Venezuelan court transmitted the letter rogatory to the United States State Department, which forwarded the matter to the Office of Foreign Litigation in the Civil Division of the Department of Justice.  The Department of Justice referred the matter to the United States Attorney's office for the Northern District of Texas, since the subjects of the letter rogatory were located in that jurisdiction.

The United States Attorney's Office petitioned the district court for the appointment of a commissioner to administer the letter rogatory.  This petition was granted and Assistant United States Attorney Rebecca Gregory was appointed commissioner. Gregory issued three subpoenas to three specific employees of EDS, and one subpoena issued to the "Custodian of Records for EDS."  EDS filed a motion to modify or, alternatively quash, the subpoenas, on the grounds that the letter rogatory sought information that was not discoverable under Venezuelan law, and that the letter rogatory

2

failed to meet certain due process requirements.

EDS's motion was referred to a magistrate judge, who determined that no discoverability determination was necessary, and that EDS's due process arguments were without merit. EDS appealed the magistrate judge's order to the district court. The district court affirmed the order dismissing EDS's motion to modify the subpoena.

II

EDS argues that before a letter rogatory is honored, a determination should be made as to whether the information requested would be discoverable under Venezuelan law. EDS maintains that if such an analysis had been undertaken, the lower court would have held that the letter rogatory sought information that was not discoverable under Venezuelan law, and was therefore not enforceable. EDS also argues that the letter rogatory violates its due process rights by failing to follow statutory procedures and by not providing adequate notice of the evidence requested. Each argument will be addressed in turn.

*A. Is A Discoverability Determination Required Of A Letter Rogatory Issued By A Foreign Court?*

Letters rogatory are governed by 28 U.S.C. § 1782, which was last amended in 1964. In amending § 1782, Congress took several steps to broaden international judicial cooperation. For instance, Congress expanded the class of litigation eligible for relief under § 1782 by replacing the word "court" with the word "tribunal." Congress also extended § 1782 to private litigants whereas that law had previously provided relief only to foreign courts. Finally,

3

Congress abrogated the requirement that the foreign litigation actually be pending before relief could be had under § 1782. *In re Application of Aldunate,* 3 F.3d 54, 57 (2nd Cir.), *cert. denied, --- U.S. ----,* 114 S.Ct. 443, 126 L.Ed.2d 376 (1993).

The clear purpose of these amendments was to facilitate American cooperation in foreign litigation matters. However, one does not have to delve very deeply into the subtext of § 1782 to discern that Congress was also motivated by an expectation of reciprocity in enacting the law. *See,* S.Rep. No. 1580, 88th Cong., 2d Sess. 1, *reprinted in* 1964 U.S.Code Cong. & Admin.News 3782.

There is no discoverability requirement in the text of § 1782, and there is nothing in the law requiring or suggesting that American courts should examine the information requested by the letter rogatory to determine whether that information comports with the discovery rules of the requesting nation. However, courts in the United States have routinely undertaken a discoverability determination when the request for information comes from a private litigant. The reason for this is to avoid assisting a foreign litigant who desires to circumvent the forum nation's discovery rules by diverting a discovery request to an American court. The case law in this area is very clear. *In re Application of Asta Medica, S.A.,* 981 F.2d 1, 7 (1st Cir.1992); *John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132, 136 (3rd Cir.1985); *In re Request for Assistance from Ministry of Legal Affairs,* 848 F.2d 1151, 1156 (11th Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989); *In re Letter of Request from Crown Prosecution*

4

*Service,* 870 F.2d 686, 693 n. 10 (D.C.Cir.1989).

There is less clarity, though, in what, if any, scrutiny a request for information from a foreign court should receive. In fact, there are no cases directly on point in this matter. However, the language and purposes of § 1782, as well as principles of comity and international relations, indicate that no such discoverability determination is required.

The reason for reviewing a private litigant's request for information is out of a fear of offending the forum nation by furthering a scheme to obviate that nation's discovery rules. That reason is, by necessity, not present in the case where a foreign court is making a request for information, because the foreign court is, presumably, the arbiter of what is discoverable under its procedural rules. For an American court to double-check the foreign court's request to determine whether it is proper under the foreign nation's rules would be exactly the kind of slight that § 1782 seeks to avoid.

In amending § 1782 Congress sought to facilitate the process of litigation involving multi-national parties, and one of the benefits this law seeks to derive is that foreign nations will return the courtesy by facilitating requests for information from the United States. The position urged by EDS would invite foreign jurisdictions to delay requests for information from American courts to determine whether the requests conform to the Federal Rules of Civil Procedure. Because examining a request for information from a foreign court for its discoverability is both

unnecessary and would thwart efforts to foster international cooperation, we do not require such an examination.

*B. Does The Letter Rogatory Violate EDS's Due Process Rights?*

EDS argues that the letter rogatory fails to meet the constitutional requirements of due process. Specifically, EDS argues that: (1) the letter rogatory does not conform with the statutory requirements for such instruments; (2) is impermissibly vague; and (3) fails to adequately identify the individuals sought. We address these claims briefly since they are without merit.

The State Department has issued guidelines for the formulation of letters rogatory. 22 C.F.R. 92.67(b). EDS argues that the letter rogatory is invalid because it does not meet the requirements of the State Department regulation. Specifically, EDS complains that the letter rogatory does not contain written interrogatories as suggested in the regulations. However, by its very language, the regulation that EDS relies on is not compulsory and does not mandate any particular form for letters rogatory. The first sentence of the subsection EDS refers to states that a "letter rogatory *customarily* " has certain features and requests certain types of information. *Id.* (emphasis provided). The regulation's use of the word "customarily" negates the inference suggested by EDS that letters rogatory must conform to the requirements of the State Department's administrative rules.

Next, EDS argues that the letter rogatory was impermissibly vague in its request for information, and that this vagueness

6

denied EDS of notice of what evidence was being sought. EDS claims that the letter rogatory's request that an expert witness be used to verify the documents in question is vague since the testimony of EDS employees would be lay testimony on the subject of the veracity of the documents. This objection is baseless, since immediately after mentioning the use of an expert witness, the letter rogatory goes on to provide an alternative that "any other suitable means necessary" may be used to authenticate the documents. The usual and customary methods of authentication may be employed, and there is no need for a straight-jacket to be placed on the methods of authenticating documents. EDS's attempt to find ambiguity in a simple request to authenticate documents is not persuasive.

Finally, EDS asserts that the subpoena issued to the "Custodian of Records for EDS" fails to adequately identify the individual to be examined. Although it may be true, as EDS claims, that every employee of EDS is a custodian of some documents, such subterfuge will not jeopardize the efficacy of the letter rogatory. Testimony, or the production of documents required by a letter rogatory, will be taken in accordance with the Federal Rules of Civil Procedure. 28 U.S.C. § 1782. Federal Rule of Civil Procedure 30(b)(6) provides that EDS may designate company officials to testify as to the authenticity of the documents in question. Since EDS's designation of a representative who may authenticate documents is provided for in the Federal Rules of Civil Procedure, there is no basis for arguing that the letter rogatory failed to meet due process requirements.

For these reasons, we find that no discoverability determination under the requesting nation's laws is necessary before honoring a letter rogatory, and that the letter rogatory in question here raises no due process concerns. The judgment of the district court is AFFIRMED.